846 A.2d 28

Jodie DEYESU, et al.

v.

Dale DONHAUSER, et al. d/b/a Wizard Knoll Log Homes.

No. 301, Sept. Term, 2002.

Court of Special Appeals of Maryland.

April 2, 2004.

Jodie L. Deyesu of Pylesville, for appellant.

Michael S. Glushakow of Baltimore, for appellee.

SONNER, KENNEY, and DEBORAH S. EYLER, JJ.

DEBORAH S. EYLER, J.

In the Circuit Court for Harford County, Dale and Jean M. Donhauser, d/b/a Wizard's Knoll Log Homes ("Wizard's Knoll"), the appellees, brought a mechanic's lien claim against Jodie and Anthony Deyesu, the appellants. Wizard's Knoll sought to recover for work performed under a contract they entered into with the Deyesus to construct the exterior of their log cabin home. The Deyesus opposed the mechanic's lien claim and filed a counterclaim against Wizard's Knoll alleging breach of contract and unfair and deceptive trade practices in violation of the Custom Home Protection Act and the Consumer Protection Act. The case went to trial on the merits of the underlying dispute over the contract. Following a bench trial, the court found in favor of Wizard's Knoll on all claims, and entered judgment against the Deyesus for $8,643.50.

The Deyesus, who represented themselves at trial and are *pro se* in this appeal, present the following six questions for review, which we have reordered and rephrased:

I.      Did the circuit court err in determining that the Custom Home Protection Act, Md.Code (1974, 2003 Repl.Vol.) sections 10–501 *et seq.,* of the Real Property Article ("RP"), Md.Code (1999 Repl.Vol.) section 4–301 of the Family Law Article ("FL"), and the Consumer Protection Act, Md.Code (2000 Repl.Vol.) sections 13–301 *et seq.,* of the Commercial Law Article ("CL"), did not apply to the facts of the case?

II.     Did the circuit court err as a matter of law by failing to find that Wizard's Knoll breached the contract?

III.    Were certain factual findings made by the circuit court clearly erroneous and improperly weighed?

IV.     Did the circuit court err in making certain evidentiary rulings?

V. Did the circuit court err in failing to consider whether the Deyesus' counterclaims were ripe for trial?

VI. Did the circuit court err in not dismissing the breach of contract claim against the Deyesus after they could no longer afford to be represented by an attorney? [1]

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

In late October 1999, the Deyesus purchased an unassembled log cabin home from Jim Barna Log Homes Unlimited,

---

1. The Deyesus state the questions presented in their brief as follows:

"I. Whether the lower court erred with regard to the Custom Home Protection Act section 10–501, The Maryland Family Code 4–301 and the Consumer Protection Act section 13–401. Did the Appellees Breach thier [sic] contract?

II. Whether the lower court was clearly erroneous in its findings of facts. Did the court give weight to improper facts and ignored proper facts? Such as, the appellees conflicting statements and did the court ignore evidence. Did the Court show a lack of willingness to even look at the log home? Is the transcript and the evidence very different then the opinion and order the court gave?

III. Whether the trial court [sic] exercise of discretion was questionable in regard to allowing testimony of D.W. Smith; not dismissing the suit when Appellant could no longer afford an Attorney; Continuing the trail [sic] in a confusing manner after striking the record and withdrawing evidence. Was the Counter suit ripe for trial? Did the trial court error [sic] by not permitting questioning of Mr. Dale Donhausers criminal incarceration? The appellant wanted to prove his lack of character and his obvious at easy [sic] in the court room, where he appeared quite at home."

The Deyesus allude to two additional arguments in their brief, which we have chosen not to include in the questions presented for review. First, they observe that the circuit court erred in denying their request for a jury trial. The record reflects, however, that the Deyesus failed to file a demand for jury trial within 15 days from the filing of the last pleading in the case, and therefore waived the right to a jury trial. *See* Md. Rule 2–325(b) (2003).

Second, the Deyesus maintain that the circuit court should have visited the construction site to make a first-hand assessment of the alleged damage to the home. Whether such a visit would have been useful in deciding the issues raised by the parties, however, was within the discretion of the circuit court. *See* Md. Rule 2–515(a) (2003) (stating that "[t]he court ... *may* order that the trier of fact view any property that is involved in the litigation") (emphasis added).

LLC ("Jim Barna"). Jim Barna shipped the home from Indiana to the Deyesus' property in Pylesville, Maryland, and supplied a construction crew to assemble the exterior of the home. The project was expected to take four to six weeks to complete. On December 7, 1999, before the project was completed, one of the gables supporting the home collapsed, and a member of the construction crew was seriously injured. Following the accident, the crew did not return to finish the project.

On January 14, 2000, the Deyesus contracted with D.W. Smith Contracting, Inc. ("Smith") to complete the assembly of the exterior of the home. Smith abandoned the project in March of 2000, claiming the Deyesus had defaulted on payments.

On March 30, 2000, the Deyesus entered into a second contract, this time with Wizard's Knoll. Under the contract, Wizard's Knoll agreed to perform the labor necessary to complete construction of the exterior of the home, and the Deyesus agreed to supply all materials. The total contract price was $20,475.00. By its terms, the contract expired on April 30, 2000; it contained provisions allowing the expiration date to be extended in the event of inclement weather, or upon the agreement of the parties, however.

Due to several problems, including Wizard's Knoll's arriving to find the construction site disorganized, the Deyesus' supplying incorrect or unusable materials, latent construction problems caused by earlier work on the home, and inclement weather, work on the project extended beyond the April 30, 2000 expiration date. The Deyesus did not object to the contract's being extended in order to complete the project.

By early June 2000, Wizard's Knoll had completed most of its work on the exterior of the home. The only work remaining was the installation of felt paper, shingles, and flashing on the roof. Wizard's Knoll hired a roofing subcontractor, but that roofer failed to show up to perform the work and eventually backed out of the job. On June 15, 2000, Wizard's Knoll notified Mrs. Deyesu that there was a problem with the roofer it had hired, but that it had contacted another roofing compa-

ny, Daniel F. Smith Roofing, Inc. ("Smith Roofing"), that could begin work in two days. Mrs. Deyesu objected to the delay caused by Wizard's Knoll's failure to have a roofer in place to immediately begin working on the final phase of the project. Following a heated argument, Wizard's Knoll agreed that if the Deyesus were not satisfied with Smith Roofing, then they (the Deyesus) could arrange for another roofer to complete the project and Wizard's Knoll would subtract the cost of the roofing work from the total contract price.

On June 16, 2000, the Deyesus entered into a contract with Buttermilk Home Builders to complete the remaining work on the project. They faxed a copy of that contract to Wizard's Knoll. Realizing its work on the project was finished, Wizard's Knoll subtracted $1,950, the amount it had agreed to pay Smith Roofing to complete the roofing work, from the total contract price, and sent a final bill to the Deyesus for $8,643.50, the balance of the contract price due. The Deyesus refused to pay.

On July 17, 2000, Wizard's Knoll filed in the Circuit Court for Harford County a suit to establish and enforce a mechanic's lien, to recover the unpaid balance of the contract price. On August 28, 2000, the court issued a show cause order directing the Deyesus to answer the mechanic's lien claim and appear and present evidence as to why a mechanic's lien should not attach to their property. On September 18, 2000, the Deyesus filed a "Response to Claim for Mechanic's Lien," opposing the mechanic's lien claim and counterclaiming for breach of contract, and unfair and deceptive trade practices in violation of the Custom Home Protection Act and the Consumer Protection Act.

A show cause hearing was held before the court on December 15, 2000. On December 21, 2000, the court issued an order ruling that there was no probable cause for the entry of an interlocutory mechanic's lien, and further ruling that the case would be dismissed unless a request that the claim be assigned for trial was made within 30 days. Wizard's Knoll timely filed its request for trial, and the case proceeded to trial on August 31 and September 4, 2001.

At the outset of the trial, the court began by stating that the matter had been scheduled for trial in order for the Deyesus to show cause as to why a final mechanic's lien should not be entered. The case continued in that posture for approximately fifteen minutes. At that point, however, the trial judge realized that the court previously had denied the interlocutory mechanic's lien claim, and that the trial, in fact, had been scheduled on the merits of the underlying breach of contract dispute. The court then struck the record, withdrew the evidence that had been introduced to that point, and started the trial over, as a breach of contract action. At the close of the evidence, the court held the matter *sub curia.*

On October 23, 2001, the trial court issued a memorandum opinion and order granting judgment in favor of Wizard's Knoll for breach of contract, in the amount of $8,643.50. The court also granted judgment in favor of Wizard's Knoll on all counterclaims. The opinion and order was entered on the docket on October 30, 2001.

Two days later, the Deyesus filed a motion to alter or amend the judgment and a motion for a new trial. Wizard's Knoll opposed both motions. On March 27, 2002, the court denied both motions. The Deyesus then noted a timely appeal on April 19, 2002.[2]

## DISCUSSION

### I.

The Deyesus contend that the trial court erred in ruling that certain statutory provisions were inapplicable to the facts

---

**2.** During the pendency of this appeal, the Deyesus filed a motion to supplement the record. The motion consisted merely of a list of 24 documents to be added to the record. We have reviewed the record, and have determined that the majority of these documents are not in the record; some of them are in the record; and some of them are in the record but are being resubmitted with personal notes written on them. The Deyesus' motion gives no reasons as to why the documents listed should be added to the record. Therefore, we have exercised our discretion to deny the motion.

of the case, including RP sections 10–501 *et seq.*, FL section 4–301, and CL sections 13–301 *et seq.* We shall discuss their arguments with respect to each of these provisions in turn.

## CUSTOM HOME PROTECTION ACT

The Custom Home Protection Act ("CHPA") broadly defines a "custom home builder" as "any person who seeks, enters into, or performs custom home contracts." RP section 10–501(d). A "custom home contract" is further defined as "any contract entered into with the buyer, with a value equal to or greater than $20,000, to furnish labor and material in connection with the construction, erection, or completion of a custom home." RP section 10–501(e).

The Deyesus maintain that the contract they entered into with Wizard's Knoll was a "custom home contract," and thus Wizard's Knoll was a "custom home builder," within the meaning of the CHPA. As such, the Deyesus argue that Wizard's Knoll was subject to the requirements of the CHPA, which include, *inter alia*, that a custom home builder hold any advance payments under the contract in an escrow account, and that certain mandatory disclosures be included in the contract. *See* RP sections 10–502 to 10–506. Because Wizard's Knoll failed to comply with these requirements, the Deyesus argue, it should have been found liable for engaging in unfair and deceptive trade practices.

Wizard's Knoll counters that the trial court properly concluded that the CHPA was inapplicable. It argues that the court correctly determined that the Deyesus acted as their own general contractor, evidenced by the fact that they hired various laborers, including construction workers, roofers, electricians, and plumbers, to build the home, procured all permits and licenses, and authorized payments from the bank for all work performed. Considering that evidence, the court properly viewed Wizard's Knoll's role as that of a subcontractor, and not as a "custom home builder" under the CHPA.

■ The contract in the case at bar does not fall within the definition of a "custom home contract." RP section 10–501(e)

plainly requires that a "custom home contract" be a contract for both labor and materials. Here, the contract was for the labor necessary to assemble the materials already purchased by the Deyesus. The language of the contract is clear in this regard; it expressly states that Wizard's Knoll will "[s]upply [l]abor to finish 'Under Roof' construction of a Jim Barna Log Home package," that the "[h]ome owners are to supply all materials," and that "[m]aterials are not included in th[e] proposal." Because the contract does not include materials, it is not a "custom home contract" subject to the CHPA. Thus, the trial court correctly determined that the CHPA did not apply.

Furthermore, we agree with the trial court that Wizard's Knoll was not a "custom home builder." In light of the entire statutory scheme, a custom home builder under the CHPA is a person who occupies the position of a general contractor with respect to the building of the home. *See* RP section 10–505(2) (requiring custom home contracts to include the names of all primary subcontractors); RP section 10–505 (requiring custom home builders to provide waivers of liens from all subcontractors). Here, the Deyesus themselves were engaged in the process of building their log cabin home, and for all practical purposes acted as their own general contractor. As Wizard's Knoll points out, the Deyesus purchased the materials for the home, secured a loan from a bank, hired the labor necessary to assemble the home, authorized payments for that work, and obtained all licenses and permits for the work. Thus, the Deyesus, not Wizard's Knoll, were the custom home builders in this case. For that reason as well, the trial court was correct in determining that the CHPA was inapplicable.

Even if we were to conclude the CHPA did apply to this case, however, the Deyesus did not present any evidence that they were harmed by Wizard's Knoll's failure to comply with the requirements of the CHPA. Without a showing of an actual injury caused by a violation of the CHPA, the Deyesus are unable to receive its protections. *See DeReggi Constr. Co.*

*v. Mate,* 130 Md.App. 648, 665, 747 A.2d 743 (2000) (holding that a custom home contract will not be rendered unenforceable without proof of an actual injury caused by a violation of the CHPA). On that separate basis, we also would uphold the judgment of the trial court.

## FL SECTION 4–301

■ Under FL section 4–301(b)(2), a husband is not liable "on a contract made by his wife in her own name and on her own responsibility." The Deyesus maintain that only Jodie Deyesu signed the contract, and therefore only she should be liable on the contract. Thus, they argue, it was error for the trial court to enter judgment against both of them.

We agree with Wizard's Knoll that the issue of whether Anthony Deyesu was a proper party to the case was not raised below, and therefore was not preserved for appellate review. Md. Rule 8–131(a) (2003); *Miller v. State,* 151 Md.App. 235, 259, 824 A.2d 1017 (2003).

## CONSUMER PROTECTION ACT

■ The Deyesus maintain that, in closing argument, they asserted that Wizard's Knoll's actions were in violation of the Consumer Protection Act ("CPA"), CL sections 13–301 *et seq.,* but the trial court erroneously failed to address that claim in its memorandum opinion and order.

We agree with Wizard's Knoll that the issue of whether its conduct violated the CPA was never raised at trial, and is therefore also not preserved for appellate review. Rule 8–131(a); *Miller, supra,* 151 Md.App. at 259, 824 A.2d 1017.

Even were we to assume that this issue was preserved, the Deyesus' CPA claim against Wizard's Knoll was based solely on their allegation that Wizard's Knoll had violated the CHPA, and therefore, under RP section 10–507, also had violated the CPA. Because the trial court properly concluded that the CHPA did not apply to this case, it necessarily would have

found no violation of the CPA. Indeed, the trial court probably made no mention of the CPA for that reason.

## II.

■ The Deyesus next contend that the trial court erred as a matter of law by failing to find that Wizard's Knoll breached the contract. The only basis for this contention appears to be that the contract had an expiration date of April 30, 2000, and Wizard's Knoll failed to complete assembly of the exterior of the home by that date. To support that contention, the Deyesus point to the fact that Dale Donhauser testified at trial that there were no extraordinary circumstances causing a delay in the completion of the project, notwithstanding that he later explained why the work on the project extended beyond the expiration date of the contract.

Wizard's Knoll counters by arguing that the Deyesus presented no evidence that they objected to the contract's being extended past its expiration date and that, by their acquiescence, they waived any argument that Wizard's Knoll breached the contract on that basis. Accordingly, it argues that the trial court correctly determined that it did not breach the contract.

We do not agree with the Deyesus that the trial court erred by failing to find, as a matter of law, that Wizard's Knoll breached the contract. Irrespective of whether Wizard's Knoll's failure to complete the assembly of the exterior of the home by the contract's April 30, 2000 expiration date was justified, there was evidence presented at trial that the Deyesus accepted work done on the home after that date, without objecting to any delay. Thus, there was a sufficient basis for the trial court to determine, as it did, that the Deyesus waived any breach by Wizard's Knoll in failing to complete the project before the contract date expired. *See John B. Robeson Assocs., Inc. v. Gardens of Faith, Inc.,* 226 Md. 215, 222–23, 172 A.2d 529 (1961) (restating the established principle of contract law that a party accepting further performance from a party

who has committed a known breach, absent an objection, waives that breach).

## III.

The Deyesus also contend that the trial court made certain factual findings that were clearly erroneous, and then assigned improper weight to those findings. We have read the section of the Deyesus' brief that corresponds to the question presented contending that the trial court made clearly erroneous factual findings, but cannot identify in that section any specific factual findings the Deyesus maintain were clearly erroneous. That section of the Deyesus' brief is a debate over the trial court's weighing of the evidence. The Deyesus complain that even though there were discrepancies in the trial testimony of Dale and Jean Donhauser, the trial court credited the Donhausers' testimony, as a whole, over their testimony.

█ It is not our role as an appellate court to re-evaluate or re-weigh the testimony and other evidence presented at trial and substitute our judgment for that of the trial court. *See Urban Site Venture II Ltd. P'ship v. Levering Assocs. Ltd. P'ship*, 340 Md. 223, 229–30, 665 A.2d 1062 (1995) (stating that appellate courts must give due regard to the trial judge's opportunity to judge the credibility of the witnesses); *Coviello v. Coviello*, 91 Md.App. 638, 655, 605 A.2d 661 (1992) (stating that with respect to conflicting testimony, " '[a]ssessing the credibility of witnesses is the role of the trial court, not the appellate courts' " (quoting *Hale v. Hale*, 74 Md.App. 555, 569, 539 A.2d 247 (1988))).

## IV.

The Deyesus next contend the trial court made several erroneous evidentiary rulings. Wizard's Knoll responds that each ruling was proper. We shall address the Deyesus' arguments with respect to each ruling separately.

## A.

First, the Deyesus argue that the trial court erred in allowing D.W. Smith, the contractor first hired by the Deyesus to complete the assembly of the exterior of the home, to testify at all. They maintain that because they were in ongoing litigation with Smith he should not have been allowed to appear at trial and testify.

This argument has no merit at all. Smith had knowledge of facts relevant to the case, *see* Md. Rule 5–401, and there was no objection or argument made by the Deyesus that his testimony would be unduly prejudicial to them. Thus, it was well within the trial court's discretion to allow Smith to testify. *See K & K Management, Inc. v. Lee,* 316 Md. 137, 152, 557 A.2d 965 (1989) (stating that the decision whether to allow certain testimony is within the discretion of the trial court). The mere fact that Smith and the Deyesus were involved in separate litigation did not make Smith ineligible to testify as a witness in this case.

## B.

Second, the Deyesus argue that the trial court erred by striking the record, withdrawing evidence, and restarting the trial after the judge realized that the case should have been proceeding as a breach of contract action and not as a show cause hearing on a final mechanic's lien claim.

The Deyesus failed to raise an objection to the court's decision to start the trial over, and thus failed to preserve the issue for our review. Rule 8–131(a); *Miller, supra,* 151 Md.App. at 259, 824 A.2d 1017. In any event, we do not see how the trial judge's actions prejudiced the Deyesus. The trial was underway for a short period of time and very little evidence had been entered to that point when the judge realized that it should have been proceeding as a breach of contract action.

## C.

■ The Deyesus argue that the trial court erred by not allowing them to ask the following questions of Dale Donhauser during cross-examination: "Have you been convicted of any crimes? Or not convicted, but charged with any crimes?"

The trial court did not err in sustaining Wizard's Knoll's objection to these questions. They were factually improper, in that they failed to lay a foundation for the court to determine whether, under Rule 5-609, the Deyesus could properly attempt to impeach Dale Donhauser on the basis of a prior conviction, and otherwise sought inadmissible evidence about charges, not convictions. *See Brown v. State*, 373 Md. 234, 236, 817 A.2d 241 (2003); *Williams v. State*, 110 Md.App. 1, 23–25, 675 A.2d 1037 (1996).

## V.

■ The Deyesus next contend the trial court erred by failing to consider whether their counterclaims were ripe for trial, based on the fact that they were unable to provide evidence as to the cost to complete construction on the home because that work was still ongoing at the time of trial.

We agree with Wizard's Knoll that this argument was not raised below, and therefore was not preserved for review on appeal. Rule 8–131(a); *Miller, supra*, 151 Md.App. at 259, 824 A.2d 1017. Accordingly, we shall not address it.

## VI.

The Deyesus' final contention is that the trial court erred by not dismissing the claims against them after they could no longer afford to be represented by an attorney.

Again, we agree with Wizard's Knoll that this argument was not raised below, and also was not preserved for review. Rule 8–131(a); *Miller, supra*, 151 Md.App. at 259, 824 A.2d 1017. Accordingly, we shall also not address it.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANTS.**